UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| SUSAN R. MCNEILLY, et al., )<br>                        Plaintiffs, )<br>-v-                                   )<br>                                   )<br>SPECTRUM HEALTH SYSTEM, et al., )<br>                        Defendants. )<br>                                   ) | No. 1:20-cv-870<br><br>Honorable Paul L. Maloney |

## ORDER

This matter is before the Court on Defendants' motion to dismiss Plaintiffs' amended complaint (ECF No. 10). For the reasons to be explained, the motion will be denied.

### I.

Defendants in this case are Spectrum Health System ("Spectrum") and the Defined Contribution Retirement Plan Investment Committee of Spectrum Health System (the "Committee"). The three named Plaintiffs (Susan McNeilly, Ron Mekkes, and Phyllis Walker) are now-retired Spectrum employees who participated in Spectrum's defined-contribution 403(b) plan (the "Plan") while they were employed by Spectrum. The Plan is a defined-contribution plan, meaning participants' benefits are limited to the value of their investment accounts, which is determined by the market performance of employee and employer contributions, less expenses (Amended Complaint, ECF No. 8 at ¶ 39). Plan participants may only invest in the investment options on the Plan's investment menu, but the Plan offers employees a range of options to invest in: in 2018, it offered 23 investment

options (*Id.* at ¶ 48). The Plan has had at least a billion dollars in assets under management at all relevant times; on December 31, 2018, it had $1.64 billion dollars (*Id.* at ¶ 49).

The Committee is the Plan's fiduciary and overseer: the Committee is responsible for selecting and monitoring the investments in the Plan (*Id.* at ¶ 28). The Committee has the authority to select, monitor, evaluate, and modify the Plan's investments, subject to the ultimate oversight and direction of Spectrum (*Id.* at ¶¶ 24, 30). The essence of the amended complaint is that the Committee did not give adequate attention to the investments in the Plan: Plaintiffs challenge the performance and/or fees of 23 of the 38 investment options that have been offered at various times since 2014 (*Id.* at ¶¶ 90, 98, 100, 102, 112-133).

A brief overview of the types of relevant fees is helpful. Investment-management fees are ongoing charges for managing the assets in the investment fund. These are often expressed in the form of an "expense ratio" which is a percentage deduction against a participant's total assets in their investment (*Id.* at ¶ 87). For example, a participant who invests $1,000 in a fund with an expense ratio of 0.10% will pay an annual fee of $1,000 x 0.001 = $1.

Recordkeeping fees cover the "day-to-day" expenses of keeping the funds running (*Id.* at ¶ 150). One way to charge recordkeeping fees is via revenue sharing, which allows mutual funds to pay the administrator via the performance of the fund (*Id.*). For example, if an investment's expense ratio is 0.40%, the investment manager would "share" (pay) a portion of the 0.40% fee ("revenue") it collects with the plan's recordkeeper for the services that the recordkeeper provides. From 2014 until 2020, the Plan's recordkeeper was Voya,

which was paid via revenue sharing or via direct fees paid by participants as a percentage of the value of assets in their investment vehicles (*Id.* at ¶ 130).

Plaintiffs allege that the Committee's failure to even attempt to provide better investments was a breach of the fiduciary duties of loyalty and prudence (Count I). Plaintiffs also allege that Spectrum did not sufficiently monitor the Committee's decisions and actions (Count II). Plaintiffs have filed this action as a putative class action.

On January 15, 2021, Defendants filed a motion to dismiss for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted (ECF No. 10). Plaintiffs responded (ECF No. 12), Defendants replied (ECF No. 15), and the parties have filed several documents titled "Notice of Supplemental Authority" and responses thereto (ECF Nos. 14, 16, 17, 18, 19, 20). The Court has considered all of these pleadings and determined that oral argument on the motion to dismiss is unnecessary. *See* W.D. Mich. LCivR 7.2(d).

## II.

When challenged by a motion filed under Rule 12(b)(1), the plaintiff bears the burden of establishing subject matter jurisdiction. *E.E.O.C. v. Hosanna-Tabor Evangelical Lutheran Church and School*, 597 F.3d 769, 776 (6th Cir. 2010), *rev'd on other grounds*, 565 U.S. 171 (2012). A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction may take the form of a facial challenge, which tests the sufficiency of the pleading, or a factual challenge, which contests the factual predicate for jurisdiction. *See RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting *Mortensen v. First Fed. Savings and Loan Ass'n*, 549 F.2d 884, 890-91 (3d Cir. 1977)). In a facial attack, the

3

court accepts as true all the allegations in the complaint, similar to the standard for a Rule 12(b)(6) motion. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). In a factual attack, the allegations in the complaint are not afforded a presumption of truthfulness and the district court weighs competing evidence to determine whether subject matter jurisdiction exists. *Id.*

A complaint must contain a short and plain statement of the claim showing how the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A defendant bringing a motion to dismiss for failure to state a claim under Rule 12(b)(6) tests whether a cognizable claim has been pled in the complaint. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide sufficient factual allegations that, if accepted as true, are sufficient to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, and the "claim to relief must be plausible on its face." *Id.* at 570. "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation

4

omitted). If plaintiffs do not "nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

When considering a motion to dismiss, a court must accept as true all factual allegations, but need not accept any legal conclusions. *Ctr. For Bio-Ethical Reform*, 648 F.3d at 369. The Sixth Circuit has noted that courts "may no longer accept conclusory legal allegations that do not include specific facts necessary to establish the cause of action." *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1050 (6th Cir. 2011). However, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations"; rather, "it must assert sufficient facts to prove the defendant with 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Rhodes v. R&L Carriers, Inc.*, 491 F. App'x 579, 582 (6th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555).

### III.

### A.

Defendants first argue that the Court lacks subject matter jurisdiction to hear this case because Plaintiffs do not have standing. To satisfy the "irreducible constitutional minimum of standing" and demonstrate that a case or controversy exists, a plaintiff must establish that he has suffered: 1) a concrete and particularized, actual or imminent injury in fact; 2) a causal connection between the injury and the conduct complained of; and 3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Defendants' standing argument relies almost entirely on *Thole v. U.S. Bank*, 140 S. Ct. 1615 (2020). In *Thole*, the Supreme Court found that two retirees did not have standing to challenge the decisions made by the fiduciaries of their employer's

retirement plan *Id.* at 1619. But in doing so, the Court noted that it was of "decisive importance" that the plan at issue was a defined-*benefit* plan, not a defined-*contribution* plan like a 401(k) (or a 403(b), like in this case). *Id.* at 1618. The Court explained that in

> a defined-benefit plan, retirees receive a fixed payment each month, and the payments do not fluctuate with the value of the plan or because of the plan fiduciaries' good or bad investment decisions. By contrast, in a defined-contribution plan, such as a 401(k) plan, the retirees' benefits are typically tied to the value of their accounts, and the benefits can turn on the plan fiduciaries' particular investment decisions.

*Id.* Given the clear distinction here, *Thole* does not immediately foreclose Plaintiffs' claims in this lawsuit: the Supreme Court clearly left the door open for participants in a defined-contribution plan to challenge their plan fiduciaries' investment decisions, so long as they can establish normal Article III standing.

Relying on *Thole*, Defendants argue that Plaintiffs have no standing to challenge the funds in which they did not personally invest, because without a personal investment, they cannot show an injury in fact. Plaintiffs counter by arguing that a suit under ERISA is brought in a representative capacity on behalf of the plan as a whole, and that remedies "protect the entire plan." 29 U.S.C. §§ 1132(a)(2), 1109.

Plaintiffs' argument carries the day. Courts have long recognized that a plaintiff who is injured in his own assets—so has Article III standing—may proceed under § 1132(a)(2) on behalf of the plan or other participants even if the relief sweeps beyond his own injury. *See, e.g., Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 593 (8th Cir. 2009); *Davis v. Magna International of America, Inc.,* No. 20-11060, 2021 WL 1212579, at *4-5 (E.D. Mich. March 31, 2021); *McCool v. AHS Mgmt. Co., Inc.,* No. 3:19-cv-01158, 2021 WL 826756, at *3

6

(M.D. Tenn. March 4, 2021) (collecting cases). All courts within the Sixth Circuit that have considered the issue have determined that *Thole* applies (consistent with its language) only to defined-benefit plans. *See Davis*, 2021 WL 1212579, at *4-5; *McCool*, 2021 WL 826756, at *3.

To determine whether any of the three named plaintiffs have established Article III standing, the Court can consider the pleadings and any other relevant evidence. *See Ohio Nat'l Life Ins. Co.,* 922 F.2d at 325 (on Rule 12(b)(1) motion to dismiss based on subject matter jurisdiction, "a trial court has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts"). Defendants have produced a declaration by Kimberly Thomas, the Principal of System Benefits for Spectrum (ECF No. 11-9), which confirms that Plaintiff Phyllis Walker only invested in the Voya Fixed Plus Account III fund (*Id.* at ¶ 8). Importantly here, Plaintiffs do not challenge the fees and/or performance of this account (*see* summary of unchallenged accounts in Defendants' Brief, ECF No. 11 at PageID.124, n. 4). Walker has not suffered any personal injury, so she does not have standing to bring a claim. Plaintiffs do not dispute this fact, so Walker must be dismissed for lack of standing.

The other two named Plaintiffs have satisfied the requirements of Article III because they have alleged actual injury to their Plan accounts: they invested in at least one fund that has been challenged. This injury is fairly traceable to Defendants' conduct, a causal connection between Defendants' alleged conduct and Plaintiffs' losses exists, and Plaintiffs have demonstrated a liklihood that their injuries will be redressed by a favorable judgment. The motion to dismiss for lack of standing will be denied as to McNeilly and Mekkes.

7

**B.**

That brings the Court to the merits of Plaintiffs' claims. The Court will first consider the allegation that the Committee breached the duty of prudence. Under 29 U.S.C. § 1104(a)(1),

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and-- ... (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;....

Thus, ERISA requires the fiduciary of a pension plan to act prudently in managing the plan's assets. *Pfeil v. State Street Bank and Trust Co.*, 806 F.3d 377, 383 (6th Cir. 2015). "The test for determining whether a fiduciary has satisfied his duty of prudence is whether the individual trustees, at the time they were engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment." *Id.* at 384 (quoting *Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 723 (6th Cir. 2000) (quotation marks omitted)). This test is one of conduct, not of results, and a plaintiff must plausibly allege actions that were objectively unreasonable. *Ellis v. Fidelity Mgmt. Trust Co.*, 883 F.3d 1, 10 (1st Cir. 2018); *see also Magna*, 2021 WL 1212579, at *6; *Miller v. AutoZone, Inc.*, No. 2:19-cv-2779, 2020 WL 6479564, at *3 (W.D. Tenn. Sept. 18, 2020).

Notably, "ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences." *Braden*, 588 F.3d at 598. This has resulted in courts reading ERISA plaintiffs' complaints slightly more leniently, allowing discovery as long as plaintiffs have provided enough factual allegations to create reasonable inferences that defendants' process of selecting or monitoring funds was

8

imprudent. *See, e.g., Pension Ben. Guar. Corp ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Investment Mgmt. Inc.*, 712 F.3d 705, 718-19 (2d Cir. 2013); *see also Magna*, 2021 WL 1212579, at *6; *AutoZone*, 2020 WL 6479564, at *3. Essentially, a plaintiff must plead facts sufficient to demonstrate that he is not going on a "fishing expedition," but the Court may also consider his limited access to information at this early stage. *Braden*, 588 F.3d at 598.

The amended complaint alleges that Defendants breached their duty of prudence by some combination of the following facts: That the majority of funds chosen by the Committee (particularly the Voya funds) were more expensive but performed worse than comparable funds; that the Committee could and should have selected identical but lower-cost share classes;[1] that the Committee failed to consider materially similar but cheaper alternatives, and that a reasonable investigation (which Plaintiffs allege was not done) would have revealed the existence of these lower-cost alternatives; that the recordkeeping and administrative costs of the Plan were excessive; and that the Plan could have leveraged its large size to negotiate with and reduce the recordkeeping and administrative costs but failed to even attempt to do so. Plaintiffs support each of these arguments with tables and charts comparing various investment options (*see, e.g.*, Amended Complaint at ¶¶ 90, 98, 102).

---

[1] The amended complaint explains share classes as follows:

> Many mutual funds offer multiple classes of shares in a single mutual fund that are targeted at different investors. Generally, more expensive share classes are targeted at smaller investors with less bargaining power, while lower cost shares are targeted at institutional investors with more assets, generally 1 million or more, and therefore greater bargaining power. There is no difference between share classes other than cost—the funds hold identical investments and have the same manager.

(Amended Complaint, ¶ 93).

9

The Court finds that the arguments fit into two main categories: challenges to investment sections and challenges to fees imposed.

But before delving into the specifics of Plaintiffs' arguments, the Court must note the circuit split regarding what is necessary to plead a violation of ERISA's duty of prudence. The Third, Eighth, and Ninth Circuits have held that allegations regarding imprudent investment selections and excessive fees, such as the ones presented by Plaintiffs here, may state a claim for violation of ERISA.[2] The Sixth Circuit has not yet weighed in, but the Western District of Tennessee, the Middle District of Tennessee, and the Eastern District of Michigan have recently allowed similar claims to proceed.[3] The Seventh Circuit disagrees, but a petition for certiorari has been granted in the Seventh Circuit case. *See Hughes v. Northwestern Univ.*, No. 19-1401, 2021 WL 2742780 (Mem.) (July 2, 2021). Absent guidance from the Supreme Court or the Sixth Circuit, the Court finds the majority view to be more persuasive than the Seventh Circuit's position.

### Investment Options

Part of the duty of prudence under ERISA is a duty to exercise prudence in selecting investments, as well as an ongoing duty to monitor investments and remove imprudent ones. *Tibble v. Edison International,* 575 U.S. 523, 529 (2015). To establish a violation of this duty, a plaintiff must allege facts that, if true, "would show that an adequate investigation

---

[2] *See Davis v. Washington Univ. in St. Louis*, 960 F.3d 478 (8th Cir. 2020); *Sweda v. Univ. of Pennsylvania*, 923 F.3d 320 (3d Cir. 2019); *Tibble v. Edison International*, 729 F.3d 1110 (9th Cir. 2013), *vacated on other grounds*, 575 U.S. 523 (2015).
[3] *See Magna*, 2021 WL 1212579; *McCool*, 2021 WL 826756; *AutoZone,* 2020 WL 6479564.

10

would have revealed to a reasonable fiduciary that the investment at issue was improvident." *St. Vincent*, 712 F.3d at 718.

Plaintiffs argue that the Plan had one of the highest total costs for plans of comparable size (Amended Complaint at ¶ 10). More specifically, Plaintiffs argue that certain investment options had much higher fees than the median fees for plans of a similar size, as calculated by an Investment Company Institute study (*Id.* at ¶ 90). Plaintiffs allege that an extremely large Plan, like this one, could have used its asset size and negotiating power to invest in the cheapest share classes available (*Id.* at ¶ 95). Plaintiffs allege that the Committee's failure to monitor and review the investment options was a violation of its duty of prudence.

Defendants bring three arguments in favor of dismissing this claim. First, Defendants argue that ERISA does not mandate certain that funds (or even a certain mix of funds) are provided to employee-investors. To be sure, nothing in ERISA requires a fiduciary to find and offer only the cheapest funds. *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009). Nor does anything in ERISA require plan fiduciaries to include any particular mix of investment vehicles in their plan. *In re Honda of America Mfg., Inc. ERISA Fees Litig.*, 661 F. Supp. 2d 861, 866 (S.D. Ohio 2009). Defendants argue that they provided a sufficient mix of investment options, so if Plaintiffs wished to invest in a low-cost, passively managed fund, they could have. In response, Plaintiffs argue that given the availability of less costly alternatives, Defendants did not satisfy their fiduciary duty to consider the power of the Plan to obtain "favorable" investment products. *Sweda*, 923 F.3d at 329. This is because simply having a "mix and range" of investment options, including those with varying expense ratios, is insufficient to dismiss a complaint because to do so "would insulate from liability every

11

fiduciary who, although imprudent, initially selected a 'mix and range' of investment options." *Id.* at 334; *see also Tussey v. ABB, Inc.*, 746 F.3d 327, 335-36 (8th Cir. 2014).

At this stage, the Court concludes that Plaintiffs' allegations are enough to survive the motion to dismiss: Plaintiffs allege that not only did Defendants provide unsuitable investments, they failed to sufficiently consider other alternatives. The *Sweda* logic is persuasive: If Defendants can skirt an allegation of imprudence simply by providing a "mix and range" of investment options, that would allow every imprudent fiduciary to avoid discovery simply because they offered at least one low-cost plan.

Next, Defendants argue that Plaintiffs cannot state a viable claim based on the comparisons they draw in the amended complaint because those comparisons are not perfect comparisons (*see, e.g.*, Amended Complaint at ¶¶ 113-25). Defendants focus on the different stock options involved in each fund and its comparator fund, arguing that the facts and evidence attached to their motion show that the proposed comparator funds are too distinct to be adequate comparisons. However, if anything, this makes clear that discovery is necessary: whether a certain fund is a good comparator for another fund is clearly a fact-intensive issue, and the Court cannot rule as a matter of law that the funds Plaintiff has identified as comparators are improper. *See, e.g., Nicolas v. Trustees of Princeton Univ.*, 2017 WL 4455897, at *5 (D.N.J. Sept. 25, 2017) (an inquiry into whether the alternative funds plaintiffs suggest are apt comparisons raise factual questions that "do not warrant dismissal—to the contrary, they suggest the need for further information from both parties."); *see also Magna*, 2021 WL 1212579, at *7.

12

Third, Defendants argue that Plaintiffs cannot bring a "hindsight-based" claim to argue that some funds in the Plan were underperforming. ERISA's prudence standard is based on "circumstances then prevailing," so it is true that hindsight-based allegations are improper. 29 U.S.C. § 1104(a)(1)(B); *see also Graham v. Fearon*, 721 F. App'x 429, 437 (6th Cir. 2018). However, Plaintiffs bring allegations that the Committee failed for *years* to perform sufficient reviews or investigations into the Plan's performance. Thus, it is plausible that Defendants had access to performance data at various points throughout the relevant period, and Plaintiffs' allegation is that Defendants did not adequately consider that information. If this allegation is true, it is a breach of ERISA: The Supreme Court requires fiduciaries to continually monitor investments from the time the investments are selected to every moment during the Class Period. *See Tibble*, 575 U.S. at 529. Given that the Plaintiffs cannot see into Defendants' review process without the benefit of discovery, the Court finds that this issue is also sufficiently pleaded to withstand the motion to dismiss.

Defendants next argue that Plaintiffs' arguments regarding lower-cost share classes are improper because Plaintiffs did not choose appropriate comparator share classes, and because Defendants did move to lower-cost share classes during the relevant period. Defendants admit that at the end of 2020, the Plan changed recordkeepers, with participants now paying a flat annual administrative and recordkeeping fee of $22 (*see* Defendants' Brief, ECF No. 11 at PageID.141). These facts, Defendants argue, require dismissal of Plaintiffs' claims. The Court rejects Defendants' arguments for two reasons. First, courts examining this issue have concluded that investment in a retail class fund where an identical institutional class fund with lower fees is available raises a plausible allegation that the Plan's administrator

13

violated the duty of prudence. *Washington Univ.*, 960 F.3d at 483; *Disselkamp v. Norton Healthcare, Inc.*, No. 3:18-cv-48, 2019 WL 3536038, at * 4-5 (W.D. Ky., Aug. 2, 2019). Whether the fiduciary failed to leverage its size to negotiate a cheaper cost or was simply "asleep at the wheel" and failed to notice cheaper options is irrelevant: either way is sufficient to state a claim for breach of duty of prudence. *Washington Univ.*, 960 F.3d at 483. Thus, the allegation that identical but cheaper funds were available is sufficient to survive the present motion. Indeed, "a prudent fiduciary – who indisputably has knowledge of institutional share classes and that such share classes provide identical investments at lower costs" should "switch share classes immediately." *Tibble v. Edison International,* No. 07-5359, 2017 WL 3523737, at * 13 (C.D. Cal., Aug. 16, 2017). And Defendants' argument that they *did* move to lower-cost share classes is misplaced as well. First, it appears that the changes Defendants made may not have been in funds referenced in this case, so the changes do not appear to be relevant. And second, the fact that Defendants made some changes raises a question of fact – why didn't Defendants move more or all of the higher-cost share classes to a lower-cost group? Plaintiffs raise several relevant questions of fact with this argument, demonstrating the need for discovery. Therefore, the motion to dismiss must be denied.

It is worth mentioning that Defendants slice-and-dice Plaintiffs' amended complaint. They take each allegation separately to attack them individually. The Court finds, as outlined above, that the motion to dismiss fails when considered in that way. But the Court must note that reading the amended complaint as a whole makes more sense: The "bigger picture" is the allegation that the Committee was not reviewing the Plan's options regularly, not acting

14

in the best interest of Spectrum's employees, and using higher-cost vehicles to pay for revenue sharing. Taken together, Plaintiffs very plausibly allege that the Committee breached its duty of prudence, so the motion to dismiss Count I will be denied. *See, e.g., McGowan v. Barnabas Health, Inc.*, No. 20-13119, 2021 WL 1399870, at *6 (D.N.J. Apr. 13, 2021) ("The complaint should not be parsed piece by piece to determine whether each allegation, in isolation, is plausible."). The Court reiterates that evaluation of Plaintiffs' claims will require "examination of particular circumstances, specific decisions, and the context of those decisions," which necessarily present questions of fact that cannot be resolved on a motion to dismiss. *McCool*, 2021 WL 826756, at *5. Taking Plaintiffs' allegations together with the reasonable inferences and suggested comparisons, the Court finds that Plaintiffs have pleaded sufficient facts regarding investment options for that portion of Count I to proceed past Defendants' motion to dismiss.

### Fees Imposed

"It is beyond dispute that the higher the fees charged to a beneficiary, the more the beneficiary's investment shrinks." *Tibble v. Edison International*, 843 F.3d 1187, 1198 (9th Cir. 2016). "[A] fiduciary's failure to ensure that record-keepers charged appropriate fees and did not receive overpayments may be a violation of ERISA." *Cassell v. Vanderbilt Univ.*, 285 F. Supp. 3d 1056, 1065 (M.D. Tenn. 2018); *see also Sweda*, 923 F.3d at 328. As above, the "question whether it was imprudent to pay a particular amount of record-keeping fees generally involves questions of fact that cannot be resolved on a motion to dismiss." *Id.* at 1064.

Plaintiffs allege that the recordkeeping and administrative costs ranged from $46 per participant up to $161.50 per participant (Amended Complaint at ¶ 152). Despite the market trend of recordkeeping fees lowering in recent years, the Plan's fees increased every year from 2016 until 2019 (*Id.* at ¶ 166). Plaintiffs allege that comparable services were available for $40 or less per participant (*Id.* at 161). Plaintiffs allege that the Committee could have used the Plan's large size and large number of participants, together with the fact that the recordkeeping fee market is competitive and fees are declining, to negotiate lower fees for the Plan. The reasonable inference here, Plaintiffs argue, is that the Committee's processes for selecting a recordkeeper, review and retention of the recordkeeper, and/or negotiating fees with the recordkeeper was flawed. Based on these arguments, the Court finds that the amended complaint adequately pleads a claim for breach of ERISA's duty of prudence. The facts Plaintiffs have alleged lead to the reasonable, plausible inference that Defendants' review process was flawed, and that the Committee failed to adequately monitor the Plan's fees and expenses.

To avoid this conclusion, Defendants apply the same arguments as above to Plaintiffs' allegation that management fees for several of the Plans' investment options were higher than the median management fee for similarly sized plans: Defendants argue that they offered a range of investments; that Plaintiffs' chosen comparator funds are improper benchmarks; and that the Committee did in fact make changes to lower fees during the period considered in the amended complaint. For the reasons stated above, these arguments are unconvincing at this early stage. Offering a range of investments does not automatically mean that

Defendant was a prudent fiduciary.[4] *Sweda,* 923 F.3d at 329. The comparator-fund issue is a fact-intensive analysis, ill-suited to the motion to dismiss stage. Further, the Court notes that Defendants' decision to change recordkeepers to one with a flat annual administrative and recordkeeping fee of $22 may indicate a breach of fiduciary duty, given that Defendants had an ongoing duty to monitor the Plan's expenses. *See, e.g., Creamer v. Starwood Hotels & Resorts Worldwide, Inc.,* 2017 WL 2909408, at *3 (C.D. Cal. May 1, 2017) (Because Starwood failed to exercise bargaining power to obtain lower fees for many years... "viewed in the light most favorable to Plaintiffs, the Court can infer from these facts that Starwood's recordkeeping and administrative fees were excessive prior to 2015 and are still excessive."). Taking this fact together with Plaintiffs' other allegations regarding excessive fees, the Court finds this claim plausible, and it will survive the motion to dismiss.

Finally, Defendants attack Plaintiffs' allegations that the recordkeeping fee structure itself was improper, arguing that revenue sharing is perfectly lawful. This legal statement is true. *See, e.g., Divane v. Northwestern Univ.,* 953 F.3d 980, 985 (7th Cir. 2020) (holding that there is "nothing wrong—for ERISA purposes—with plan participants paying recordkeeper costs through expense ratios."). But Plaintiffs do not allege that revenue sharing is *per se* improper; instead, they argue that that Defendants used higher-cost share classes to generate revenue sharing to pay for the Plan. Defendants do not dispute this fact, which reveals two things. First, that Defendants acknowledge that they were in higher-cost share

---

[4] Defendants also argue that the Plan's fees fit comfortably within the range that various Circuits have held "to be prudent as a matter of law." The Court finds this to be a misreading of the caselaw: no courts have endorsed the concept of an always prudent range of offerings and fees, nor do they create a presumption of reasonableness for any fees. *See Magna,* 2021 WL 1212579, at *9 (rejecting this argument). To do so would effectively insulate all fiduciaries that offer a range of investments.

17

classes when lower cost share classes were available. And second, the fact that Defendants retained higher-cost shares to provide more basis for revenue sharing supports the inference that funds were not selected on their merits. *See, e.g., AutoZone*, 2020 WL 6479564, at *9. Taken to its most extreme, Plaintiffs' allegation is that Defendants chose higher-cost share classes to generate higher revenues for Voya, without regard for the participants' best interest. This clearly would be a breach of the duty of prudence. The Court passes no judgment on whether this is what occurred or not, but the allegation is plausible, and Defendants remain able to disprove the allegation with the benefit of a developed record at summary judgment or trial.

The Court finds that Plaintiffs' amended complaint sufficiently states a claim for breach of the fiduciary duty of prudence in Count I.

## C.

Count I also charges the Committee with breaching ERISA's duty of loyalty. "To state a claim for breach of the duty of loyalty, a plaintiff must do more than allege that a defendant failed to act for the exclusive purpose of providing benefits to participants. Rather, a plaintiff must allege plausible facts supporting an inference that the defendant acted *for the purpose* of providing benefits to itself or someone else." *Ferguson v. Ruane Cunniff & Goldfarb Inc.*, No. 17-CV-6685, 2019 WL 4466714, at *4 (S.D.N.Y. Sept. 18, 2019) (citations omitted).

Defendants' argument here is wholly conclusory and simply states that Plaintiffs' claim must be dismissed because there are no allegations that Defendant acted in a way to benefit itself. In response, Plaintiffs argue that Defendants chose a combination of high-cost investments and a revenue-sharing fee structure to use a portion of the fees to pay Voya's

inflated fees: when Voya was replaced at the end of 2020, the high-cost options were replaced. Plaintiffs argue that these facts support the inference that Defendants acted in a way that would save itself costs at the expense of the Plan's participants, or in a way that favored Voya over the Plan's participants. Either reason is inconsistent with the duty of loyalty. *See, e.g., Johnson v. Providence Health & Serv.*, No. C17-1779, 2018 WL 1427421, at *9 (W.D. Wash. Mar. 22, 2018) ("While the complaint provides no direct evidence of self-dealing or preferential treatment for Fidelity, the inclusion and retention of various Fidelity investment products is circumstantial evidence that Defendants did not act "with an eye single toward beneficiaries' interests."); *Henderson v. Emory Univ.*, 252 F. Supp. 3d 1344, 1356 (N.D. Ga. May 10, 2017) ("Whether the [p]lans' fiduciaries intended to benefit TIAA, Fidelity, and Vanguard is an issue than can be better determined at the motion for summary judgment stage.").

The Court finds Plaintiffs' arguments convincing, and Defendant has made no persuasive counterargument. Therefore, the motion to dismiss will be denied as to the remaining portion of Count I.

### D.

Count II alleges that Spectrum failed to monitor the Committee's actions. Again, Defendants seek dismissal of this claim because they seek dismissal of Count I: if there was no substantive breach by the Committee, there could not have been a failure to monitor the Committee by Spectrum. They do not raise any other argument here. Given that the allegations in Count I are plausible, and no other argument was made against Count II, the Court finds that Count II should not be dismissed at this stage. *See, e.g., Disselkamp*, 2019

WL 3536038, at *11 ("Plaintiffs, however, need not directly assert actions by Defendants that demonstrate their failure to monitor to survive a motion to dismiss, so long as the Court can plausibly conclude from the surrounding factual circumstances that a violation occurred.").

### IV.

The Court finds that Plaintiff Walker does not have standing to bring this claim, but otherwise, Plaintiffs' amended complaint withstands Defendants' motion to dismiss. Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss (ECF No. 10) is **GRANTED** as to Walker and **DENIED** in all other respects.

**IT IS SO ORDERED.**

Date: July 16, 2021                                         /s/ Paul L. Maloney
                                                            Paul L. Maloney
                                                            United States District Judge